LTG

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

    - against -

JOSEPH VALERIO,

          Defendant.

– – – – – – – – – – – – – –X

**FILED**
U.S. CLERK'S OFFICE
DISTRICT COURT E.D.N.Y.
★ JAN 28 2014 ★
LONG ISLAND OFFICE

C O M P L A I N T

(18 U.S.C. §§ 2251(a) and
2252(a)(4)(B))

**14-0080M**

EASTERN DISTRICT OF NEW YORK, SS:

       STEVEN TROYD, being duly sworn, deposes and states that he is a Special

Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as

such.

       On or about and between April 2012 and the present, within the Eastern District

of New York and elsewhere, the defendant JOSEPH VALERIO did knowingly and

intentionally employ, use, persuade, induce, entice, and coerce a minor to engage in sexually

explicit conduct for the purpose of producing visual depictions of such conduct, which visual

depictions were produced using materials that had been mailed, shipped and transported in and

affecting interstate and foreign commerce and which visual depictions were transported and

transmitted using a means and facility of interstate and foreign commerce.

       (Title 18, United States Code, Section 2251(a) and 2252(a)(4)(B)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      I have been employed as a Special Agent of the FBI since 1994, and am currently assigned to the FBI squad which encompasses the Long Island Child Exploitation Task Force.   I have experience investigating cases of child exploitation, coercion and enticement and child pornography.   I have gained expertise in these areas through daily work related to conducting these types of investigations and the execution of numerous search warrants, including those relating to child pornography offenses.   In addition, I have consulted with other agents and law enforcement personnel who have extensive training and experience in child sexual exploitation investigations and computer forensics.

2.      I am familiar with the information contained in this affidavit based on my own personal participation in the investigation, my review of documents, my training and experience, and discussions I have had with other law enforcement personnel.   Additionally, statements attributable to individuals herein are set forth in sum and substance and in part.

### BACKGROUND

3.      On or about November 8, 2013, FBI Special Agent Peter M. Angelini, Jr., Assistant Legal Attache ("ALAT"), interviewed Jane Doe #1 ("JD #1") in Kyiv, Ukraine.   JD #1 provided the following information:

4.      JD #1 met the defendant JOSEPH VALERIO, through the dating website "ukrainiandate.com" during the summer of 2011. In July 2011 JD #1 traveled to Long Island,

---

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

New York, to meet with defendant VALERIO for a few weeks.  In September 2011, JD #1 returned to the United States and stayed with defendant VALERIO until early October 2011.

5.     JD #1 initially thought defendant VALERIO was a good person, however, her opinion changed.  While the defendant seemed normal during their first phone conversation, she began to think he was strange after they met.  The defendant had a quick temper and liked to hold her down and slap her during sex.  The defendant told her he had video recorded himself having sex with her and other women without their knowledge and that he had sold the recordings.  The defendant said he wanted to have a sexual encounter with her and another woman at the same time.  On one occasion the defendant tried to rape her and struck her face.  JD #1 threatened to call the police.  Defendant VALERIO became furious. The defendant wrote up a contract for her to sign, detailing her obligations to and expectations from JD #1.  Nonetheless, JD #1 wanted to marry defendant VALERIO when she returned to Ukraine in October 2011.

6.     At the end of 2011, JD #1's tourist visa had been revoked and while she did not meet with defendant VALERIO again, she still wanted to marry him, and they maintained contact via e-mail and SMS texts.  JD #1's visa was revoked because defendant VALERIO had provided a support letter for her and she told the U.S. State Department interviewer that she was going to marry him.  JD #1 was told her visa was revoked because she had immigrant intent.  Defendant VALERIO constantly requested JD #1 to bring her daughter, Jane Doe #2 ("JD #2"), whose identity is known to the United States Attorney, with her to visit defendant VALERIO in the U.S. and told her he had claimed JD #2 on his U.S. taxes as a dependent.  JD #1 discussed getting a fiancé visa with VALERIO but he told her he thought

she might not be able to get one.   From late 2011 through the Fall 2013, defendant VALERIO and JD #1 continued to communicate.

7.     At the request of defendant VALERIO, JD #1 made videos of herself with her three-year-old daughter JD #2, doing various acts that were scripted by defendant VALERIO and then performed by JD #1 and JD #2 often in the nude.   The videos involved JD #1 and JD #2 together, and included genital-touching of JD #2 and the use of the child's toys on JD #2 in a sexual manner.   Despite VALERIO's request, JD #1 indicates she did not penetrate JD #2's vagina with any objects, even though she did touch JD #2's genitals.   VALERIO requested that JD #1 have JD #2 perform oral sex on JD #1.   JD #1 indicates she did not do this. JD #1 estimated that she made between twenty to thirty of these types of child pornographic videos for defendant VALERIO with her cellphone.   JD #1 made three or four longer videos which she put onto a disc and sent to defendant VALERIO via parcel delivery service.

8.     JD #1 indicated she felt she was almost blackmailed to do these things by defendant VALERIO.   Defendant VALERIO was sending her money and would become very forceful and angry with her when she did not find Ukrainian women for him or produce videos with JD #2.   Defendant VALERIO threatened to stop sending her money if she did not produce these videos.   JD #1 estimated that over the course of their relationship, Defendant VALERIO sent her between $8,000 and $12,000.

9.     In the three days subsequent to the interview with ALAT Angelini, JD #1 emailed him a number of email threads between her and VALERIO with his attachments. These emails are described as follows:

a.     In an email dated July 22, 2012 at 10:28 PM, from defendant

VALERIO using email address joeval5@optonline.net to JD #1 using email address JD

#1es@mail.ru, VALERIO made the request, "…I WANT VIDEO OF YOU AND [JD

#2]…GET HER TO PLAY OR EAT JUST EAT YOUR PUSSY!!!".

          b.      In an email dated July 17, 2012 at 4:40 PM, from defendant

VALERIO using email address joeval5@optonline.net to JD #1 using email address JD

#1es@mail.ru, VALERIO stated, "The videos you sent by cell phone camera are PERFECT

and there is NO need for the expense of another camera, when you have done a terrific job with

the cell phone camera.  I have a new cell phone which allows me to transfer your video to my

email and the screen is bigger to view.  Plus you can have endless video time per session with

a cell phone camera.  As far as the SCRIPT"…do the same with our little [JD #2]'s

DELICIOUS LITTLE PUSSY"-you know in the tub!  The way you would eat her so

sweet…of course PANTYHOSE AND TIGHTS…AS you two dance. Place toys inside your

PUSSY" and have our little [JD #2] pull them out of your wet PUSSY…EMMM"! Tell me how

you loved when you eat her little pussy and how WET your pussy was – CORRECT?."  I told

you how I can't wait to make hard luv to you…as you eat our little [JD #2]s delicious little

pussy.  I can't wait to try it too. So no worries about a $600 - $1,300 camera!...I will send you

some cash Tuesday eve…for your time making videos with [JD #2] …times at the pool showers

and dressing rooms etc.  Buy your Mom a special gift and little [JD #2] a big toy, doll or

clothes. I can't wait to see you as well in Miami, YES absolutely! Our plans are on schedule for

the end of July…with the gratitude of your VISA!.  The day before you do the videos…at the

pool, dressing THEN with [JD #2]…LET ME KNOW AND I WILL INSTRUCT YOU HOW

TO DO IT."

10.    On November 19, 2013, JD #1 forwarded an email thread to ALAT Angelini which contained the attachment of a video that she had sent to defendant VALERIO via parcel delivery service after the email sent by her to VALERIO at JOEVAL5@optonline.net could not be opened by him.   This email was dated April 25, 2012. I have reviewed the attached video along with an agent experienced in child pornography cases. Depicted on the video is an adult woman identified by ALAT Angelini as JD #1 engaging in sexually explicit conduct with a small child, believed to be JD #2, including oral-vaginal contact and vaginal manipulation.   JD #2 appears to me, and to the experienced agent I asked to review, to be approximately three years old in this video.

11.    Account information obtained from Internet Service Provider Cablevision/Optimum Online via subpoena relating to the email address JOEVAL5@optonline.net for the email sent on July 17, 2012 at 4:40 AM EST and another email sent on July 22, 2012 at 10:28 PM EST, revealed that the JOEVAL5@optonline.net email account was assigned to the defendant JOE VALERIO and the account is currently active.

12.    Earlier today, the FBI executed a search warrant at the defendant VALERIO's residence, which was authorized by the Honorable William D. Wall on January 27, 2014.   The FBI seized the defendant's computers and cell phone.   Thereafter, during an interview, the defendant VALERIO admitted that he directed JD #1 to make sexually explicit videos of her and JD #2, her daughter, and that these videos were sent from Kyiv, Ukraine to the defendant's residence on Long Island.   Moreover, he identified his email address as JOEVAL5@optonline.net and acknowledged that he sent the July 17, 2012 email to JD #1 as

set forth *supra*.

WHEREFORE, your deponent respectfully requests that the defendant JOSEPH

VALERIO, be dealt with according to law.

STEVEN TROYD
Special Agent, Federal Bureau of Investigation

Sworn to before me this
28th day of January, 2014

/S/William D. Wall

THE HONORABLE WILLIAM D. WALL
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK