LEONARD LATO, ESQ.

35 ARKAY DRIVE, SUITE 200
HAUPPAUGE, NY 11788-3756
———

TEL:  (631) 655-5008
FAX:  (631) 300-4380

EMAIL:  leonardlato@yahoo.com

July 1, 2014

The Honorable Joseph F. Bianco
United States District Judge
Eastern District of New York
924 Federal Plaza
Central Islip, NY 11722

      Re:    *United States v. Joseph Valerio*
              14-CR-094-JFB

Dear Judge Bianco:

      The defendant Joseph Valerio moves to suppress his in-custody statements to law-enforcement officers.  Because Valerio has annexed an affidavit in which he states that he felt that he *had* to answer the officers' questions, the Court must hold an evidentiary hearing.

<u>The Valerio Affidavit</u>

      According to Valerio, "On January 28, 2014, in the early morning, FBI agents and detectives entered [his] house" and searched it.  Valerio states that, "[a]t the dining room table, the agents and the detectives questioned [him]."  "Three of them were at the table" and "[t]wo others stood behind [him]," Valerio asserts, while "[s]till others . . . search[ed his] house."  (Valerio Aff. ¶¶ 1-2.)

      Valerio recounts how one of the officers "was in [his] face a lot" and at one point said that "[Valerio] was 'going to be in a very dark place.'"  "Based on all the circumstances," Valerio contends, including having to answer questions "about emails," Valerio "felt pressured, meaning that [he] had to answer their questions."  (Valerio Aff. ¶¶ 3-4.)

      "It was only some time after the questioning began that one of the agents or detectives read [Valerio] an advice of rights form that [Valerio] signed."  The advice of rights form came too late.  According to Valerio, "Based on the atmosphere, how things had already progressed, [he] felt compelled to continue to answer their questions."  (Valerio Aff. ¶¶ 4-5.)

Applicable Law

The Court must hold an evidentiary hearing on a motion to suppress statements where, as here, the defendant has submitted an affidavit that "creates a specific factual dispute." *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998). *See also United States v. Fruchter*, 104 F. Supp. 2d 289, 308 (S.D.N.Y. 2000) (noting that "to create a factual dispute" the moving papers must contain "sworn factual allegations from an affiant with personal knowledge"). At the hearing, the government will have the burden of proving by a preponderance of the evidence that Valerio received his "advice of rights" prior to the onset of custodial interrogation and that he validly waived those rights and continued to answer questions. *See, e.g.*, *Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986); *see also United States v. Richardson*, No. 09–CR–874 (JFB), 2010 WL 5437206, at *3 (E.D.N.Y. Dec. 23, 2010) (observing that "the government has the burden of proving by a preponderance of the evidence that the statement was made after a voluntary, knowing and intelligent waiver [of] the defendant's *Miranda* rights").

The custodial-interrogation test "is an objective one: whether a reasonable person in defendant's position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest." *United States v. Newton*, 369 F.3d 659, 671 (2d Cir. 2009) (internal quotation marks omitted). Law-enforcement officers seeking to question a person must "administer warnings whenever they place a person under formal arrest or apply restraints generally understood as comparable to those of a formal arrest." *Id.* at 672. Determining when "custody" begins "necessarily involves considering the circumstances surrounding the encounter with authorities." *United States v. FNU LNU*, 653 F.3d 144, 153 (2d Cir. 2011). "Those circumstances," the Second Circuit has stated, include:

> [T]he interrogation's duration; its location (e.g., at the suspect's home, in public, in a police station, or at the border); whether the suspect volunteered for the interview; whether the officers used restraints; whether weapons were present and especially whether they were drawn; whether officers told the suspect he was free to leave or under suspicion.

*Id.*

With respect to whether a defendant makes a valid waiver of his rights, *Richardson* is instructive:

> In *Miranda v. Arizona*, the Supreme Court determined that in order to combat [the pressures surrounding in-custody interrogations] and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored. Accordingly, prior to the initiation of questioning, the government must inform a suspect of the [government's] intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and

to have counsel present . . . if [he] so desires.  Once an accused is apprised of these rights, he may waive them provided the waiver is made voluntarily, knowingly and intelligently.

. . . For a waiver to be voluntary, the waiver must have been the product of a free and deliberate choice rather than intimidation, coercion, or deception.  In addition, for a defendant to make a knowing and intelligent waiver, he must have a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  However, the accused need not know and understand every possible consequence of a waiver of the Fifth Amendment privilege. Instead, the accused need only be aware that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time.

Whether a waiver is knowing and voluntary is a question directed to a defendant's state of mind, which can be inferred from his actions and statements.  [And] . . . the question of waiver must be determined on the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused.

*Id.* at *3-4 (alterations in *Richardson* and internal quotation marks and citations omitted).

Conclusion

Valerio is entitled to a hearing.

Respectfully,

*Leonard Lato*
Leonard Lato

ec: AUSAs Allen L. Bode & Ameet B. Kabrawala

Anthony M. La Pinta, Esq.

3