

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

ALB:ABK
F.#2014R00151

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 24, 2014

<u>By ECF and Interoffice Mail</u>

The Honorable Joseph F. Bianco
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:   <u>United States v. Joseph Valerio</u>
            <u>Criminal Docket No. 14-0094 (JFB)</u>

Dear Judge Bianco:

      The government hereby moves, <u>in</u> <u>limine</u>, for rulings with respect to the admissibility of the following types of evidence at trial, scheduled to commence on November 3, 2014, in this case involving the production, transportation, receipt and possession of child pornography. First, the government respectfully requests that the Court allow it to admit into evidence videos and images of child pornography seized from the defendant's residence pursuant to a search warrant and publish selected portions thereof in its case-in-chief. Second, the government moves to preclude any reference to the possible punishments the defendant may face if convicted.[1]

I.     <u>Background</u>

      On April 9, 2014, a grand jury charged the defendant, Joseph Valerio, in a second superseding indictment (the "indictment") with three counts of sexually exploiting a child, in violation of 18 U.S.C. §§ 2251(a), 2251(c), and 2251(e); nine counts of attempted sexual exploitation of a child, in violation of 18 U.S.C. §§ 2251(e); one count of transporting child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and 2252(b)(1); one count of receiving child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and 2252(b)(1); and one count of possessing child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). The charged offenses arise from the defendant's production of child pornography

---

[1] The government reserves its right to make additional motions <u>in</u> <u>limine</u> as necessary prior to trial. The government's March 28, 2014 motion <u>in</u> <u>limine</u> remains pending. <u>See</u> ECF No. 29.

involving a 3-year-old female victim in Ukraine ("Jane Doe #1") between approximately April 1, 2012 and November 1, 2012, and a 6-year-old female victim ("Jane Doe #2") at the defendant's Smithtown residence between approximately September 10, 2010 and January 19, 2011.

At trial, the government will present evidence establishing that the defendant produced child pornography involving Jane Doe #1 and Jane Doe #2. As to Jane Doe #1, the government will introduce, among other things, evidence that the defendant repeatedly directed a co-conspirator to produce videos of the co-conspirator and Jane Doe #1 engaged in sexual conduct. Following the execution of a search warrant at the defendant's residence on January 28, 2014, law enforcement agents recovered approximately 31 videos containing child pornography involving Jane Doe #1 during the time period charged in the indictment. Of these videos, the government intends to admit approximately 10 into evidence and publish to the jury excerpted portions thereof.

Additionally, law enforcement agents also recovered approximately 24 images from an SD memory card of various photo series involving Jane Doe #2. Of these, the government intends to introduce into evidence approximately 18 still images, about 6 of which contain child pornography; the balance show Jane Doe #2 in costumes and various stages of undress, as well as the furnishings and surroundings.

The government intends to present the child pornography evidence in a manner appropriate to its sensitive nature. To that end, the government (i) has proposed voir dire questions that advise the jury of the nature of the images (see ECF No. 60); (ii) seeks to admit only one-third of the videos and images involving Jane Doe #1 and Jane Doe #2; (iii) intends to show only a brief segment, approximately one minute, of each video involving Jane Doe #1; and (iv) will offer a cautionary jury instruction directing the jury to view the images in an impartial and unbiased manner.

II.     Discussion

   A.     Videos and Images of Child Pornography are Admissible

The Court should admit into evidence videos and images of child pornography produced during the relevant time periods in order to permit the government to prove that the images the defendant produced, transported, received and possessed are child pornography, that the defendant had the requisite knowledge of the nature of the images, and to present a coherent and cohesive case for the jury. See Fed. R. Evid. 402, 403.

Federal Rule of Evidence 403 provides that relevant evidence may be excluded if its probative value is "substantially outweighed" by the danger of unfair prejudice. The Court is not, however, required to "scrub the trial clean of all evidence that may have an emotional impact[.]" United States v. Morales-Aldahondo, 524 F.3d 115, 120 (1st Cir. 2008) (citation omitted). Indeed, "all evidence admitted against a criminal defendant is meant to be prejudicial; rather, [the question] is whether admission is unfairly

2

so." United States v. Cilia, No. 05-CR-231, 2005 WL 1164153, at *2 (S.D.N.Y. May 17, 2005) (citation omitted; parenthetical in original); see also United States v. Jimenez, 789 F.2d 167, 171 (2d Cir. 1986).

In this case, the probative value of the images far outweighs any danger of unfair prejudice. To prove the charges in this case, the government must prove that the defendant produced, transported, received and possessed images depicting minors Jane Doe #1 and Jane Doe #2 engaged in sexually explicit conduct. See 18 U.S.C. §§ 2251(a), 2252(a)(2). Sexually explicit conduct is defined, in relevant part, as actual or simulated:

(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(ii) bestiality;

(iii) masturbation;

(iv) sadistic or masochistic abuse; or

(v) lascivious exhibition of the genitals or pubic area of any person

18 U.S.C. § 2256(2)(A); but see Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002) (child pornography images produced using computer simulation or by the use of adult actors who appear youthful are constitutionally protected).

Whether an image of a naked child meets the statutory definition of a minor engaged in sexually explicit conduct is a factual determination that must be made by the jury. See United States v. Rivera, 546 F.3d 245, 252-53 (2d Cir. 2008); United States v. Arvin, 900 F.2d 1385, 1391 (9th Cir. 1990) ("The distinction between a pornographic depiction and an innocent one is a distinction the jury should be able to make from its own experience."); United States v. Goodale, 831 F. Supp. 2d 804, 808 (D. Vt. 2011); cf. United States v. Irving, 452 F.3d 110, 121-122 (2d Cir. 2006) ("it does not appear that video technology is so far advanced that a jury is incapable of determining whether a real child was used to make a video. . . . Hence, we decline to hold the government is required, after Free Speech Coalition, to present expert testimony proving the children in the unlawful images are in fact real children.").

Here, the images themselves are the best evidence that they depict minors engaged in sexually explicit conduct. The government will not introduce expert medical evidence as to the age of the children nor will it call a film industry expert to establish that the images were not digitally created. Rather, the government will rely on lay testimony and the admission of the child pornography images themselves to establish multiple elements, including: (i) that the images are sexually explicit; (ii) the approximate age of the children; and (iii) that the minors depicted are real children. Details like realistic facial expressiveness, use of the same children multiple times in a series, clothing worn, or detailed

backgrounds (such as furniture) of a picture can show that the children depicted are real and defendant must have known the victims were real children. See United States v. Marchand, 308 F. Supp. 2d 498, 507 (D.N.J. 2004). Thus, it is essential that the jury be permitted to view a excerpts of videos of Jane Doe #1 and still images of Jane Doe #2 in order for the government to meet its burden of distinguishing the defendant's collection from innocent images or virtual child pornography and unlawful child pornography.

More fundamentally, the images themselves are contraband. In any criminal trial, the government is allowed to admit some of the illegal items that are charged, such as guns, drugs, smuggle aliens, false statements, or stolen merchandise. In assault cases, the government can introduce pictures of the victim's injuries. Federal juries routinely handle emotional evidence. In this case, the government intends to introduce a limited number of images in a manner crafted to reduce offense. Such admission is not unduly prejudicial. See United States v. Simpson, 152 F.3d 1241, 1249 (10th Cir. 1998) ("defendants under a child pornography charge unavoidably risk introduction of evidence that would offend the average juror[.]").

In addition to proving that the images are child pornography, not innocent pictures, the government must also prove that the defendant had the requisite mens rea at the time that he committed the charged offenses. Counts Two, Three and Fifteen of the indictment, charging sexual exploitation of a child, require the government to prove that the defendant was aware of the general nature and character of the image produced — although the government need not prove that the defendant knew the actual age of the child). See United States v. Griffith, No. 99-CR-786, 2000 WL 1253265, at *19 (S.D.N.Y. Sept. 5, 2000). Counts Four, Five and Sixteen, charging transportation, receipt and possession of child pornography, respectively, require the government to prove that the defendant knew both that the images were sexually explicit in nature and depicted minors. See United States v. X-Citement Video, Inc., 513 U.S. 64, 78 (1994).

Viewing images of child pornography is critical to permitting the jury to infer that the defendant saw the child pornography images and that any reasonable person viewing the images would have known the images were of minors engaged in sexually explicit conduct. See United States v. Polouizzi, 564 F.3d 142, 152-53 (2d Cir. 2009) (affirming admission of images and videos of child pornography because the specific nature and content of the images were relevant to the jury's evaluation of the defendant's understanding of the wrongfulness of receiving those images); United States v. Becht, 267 F.3d 767, 774 (8th Cir. 2001) ("Only by viewing the images could the jury understand how likely it was that even a glance [by the defendant] would have revealed the presence of illegal images"); United States v. Sewell, 457 F.3d 841, 844 (8th Cir. 2006) (granting government's interlocutory appeal and holding that district court abused discretion in excluding images because "images pertain to multiple elements of the offense, including whether the images constitute child pornography and whether [defendant] knew this."); see also United States v. Dodds, 347 F.3d 893, 897-98 (11th Cir. 2003) (affirming admission of 66 images of child pornography because they tended to show that the images actually constituted child pornography and that the defendant would have known that they were child pornography).

4

Furthermore, the excerpted videos and images will enable the government to present its case as a coherent narrative with full evidentiary force. The images will provide the jury with a sense of the reality of the crimes charged in this case. They will inform the jury's understanding of and appreciation for the defendant's conduct with respect to those images. This is "essential to the capacity of jurors to satisfy the obligations that the law places on them." Old Chief v. United States, 519 U.S. 172, 187-88 (1997) (recognizing as essential that evidence "has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw inferences, whatever they may be, necessary to reach an honest verdict").

The Court should admit the proposed videos and images even if the defendant attempts to stipulate that the images depict minors engaging in sexually explicit conduct and that the defendant had the requisite mens rea with respect to each image (although the defendant has not yet offered such a stipulation). It is well established that the government "is entitled to prove its case by evidence of its own choice" and a defendant may not "stipulate or admit [her] way out of the full evidentiary force of the case as the Government chooses to present it." Old Chief, 519 U.S. at 187-88; see also United States v. Gilliam, 994 F.2d 97, 101 (2d Cir. 1993). For this reason, "the prosecutor's choice will generally survive a Rule 403 analysis when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of [her] thoughts and actions in perpetrating the offense for which [she] is being tried." Old Chief, 519 U.S. at 191-92.

The Second Circuit has consistently upheld this principle. See United States v. Velazquez, 246 F.3d 204, 211-212 (2d Cir. 2001) (no abuse of discretion to admit photos of assault victim notwithstanding defendant's offer to stipulate that the beating occurred); United States v. Salameh, 152 F.3d 88, 122-123 (2d Cir. 1998) (no abuse of discretion to admit a significant number of graphic and disturbing photos of World Trade Center bombing victims, including corpse of a pregnant woman, despite defendants' stipulation offer). As in Velazquez and Salameh, in which the government was permitted to present photographic evidence of the crimes, despite their graphic and upsetting nature and the defendant's willingness to stipulate to the facts depicted, the government should be permitted to present the images here.

Indeed, courts have consistently approved the admission of child pornography images at trial over claims of undue prejudice, even where the defendant has proposed to stipulate. See, e.g., Polouizzi, 564 F.3d at 153; United States v. Schene, 543 F.3d 627 (10th Cir. 2008); United States v. Ganoe, 538 F.3d 1117, 1123-24 (9th Cir. 2008); United States v. Morales-Aldahondo, 524 F.3d 115, 119-20 (1st Cir. 2008); United States v. Sewell, 457 F.3d 841, 844 (8th Cir. 2006); United States v. McCourt, 468 F.3d 1088, 1091-92 (8th Cir. 2006); Dodds, 347 F.3d at 898-99; Becht, 267 F.3d at 773-74; United States v. Hay, 231 F.3d 630, 638-39 (9th Cir. 2000); United States v. Campos, 221 F.3d 1143, 1148-49 (10th Cir. 2000); United States v. Caldwell, 181 F.3d 104 (6th Cir. 1999).

5

      B.      <u>The Court Should Preclude any Reference to Possible Punishments</u>

The Court should preclude any reference to the possible punishments the defendant might face — especially, to mandatory minimum sentences — as irrelevant and unfairly prejudicial. <u>See</u> Fed. R. Evid. 402, 403.

Counts One through Three and Six through Fifteen of the indictment each carry a mandatory minimum sentence of fifteen years' incarceration, and Counts Four and Five each carry a mandatory minimum sentence of five years' incarceration. Evidence or argument concerning these mandatory minimum sentences and to the possible punishments the defendant might face if convicted is irrelevant to the jurors' fact-finding task. As the Supreme Court has explained, this is because "of the basic division of labor in our legal system between judge and jury":

> The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task.

<u>Shannon v. United States</u>, 512 U.S. 573, 579 (1994); <u>see also</u> <u>United States v. Glick</u>, 463 F.2d 491 (2d Cir. 1972) (jury's "function was to decide guilt or innocence and [] sentencing was the judge's province and his alone"). For this reason, "juries are not to consider the consequences of their verdicts" and should reach their verdicts "without regard to what sentence might be imposed." <u>Shannon</u>, 512 U.S. at 579 (internal quotation marks omitted); <u>see</u> <u>United States v. Blume</u>, 967 F.2d 45, 49 (2d Cir. 1992). Thus, "as a general matter, jurors are not informed of mandatory minimum or maximum sentences." <u>Shannon</u>, 512 U.S. at 586; <u>see also</u> <u>United States v. Johnson</u>, 62 F.3d 849, 850-51 (6th Cir. 1995) ("every circuit to address this issue has held that a defendant is not entitled to an instruction about a mandatory sentence"); <u>United States v. Harrison</u>, 179 F. App'x 411, 412-13 (9th Cir. 2006) (district court properly refused to inform jury about 15-year mandatory minimum sentence); <u>United States v. Broxton</u>, 926 F.2d 1180, 1183 (D.C. Cir. 1991) (no error in refusing to inform jury about mandatory minimum sentence); <u>United States v. Parrish</u>, 925 F.2d 1293, 1299 (10th Cir. 1991) (jury instruction about mandatory minimum sentences properly omitted); <u>United States v. Thomas</u>, 895 F.2d 1198, 1200 (8th Cir. 1990) (need not instruct jury on mandatory sentence); <u>United States v. McCracken</u>, 488 F.2d 406, 425 (5th Cir. 1974) (it is "error to tell the jury about the consequences of a certain verdict even if they are mandatory"); <u>United States v. Goodface</u>, 835 F.2d 1233, 1237 (8th Cir. 1987) (denying request to inform the jury of the mandatory minimum sentenced faced by the defendant because "the penalty to be imposed upon a defendant is not a matter for the jury"); <u>United States v. Delgado</u>, 914 F.2d 1062, 1066-67 (8th Cir. 1990) (no error in refusing to inform jury of mandatory minimum sentence); <u>United States v. Cox</u>, 696 F.2d 1294, 1298 (11th Cir. 1983) (disapproving of informing a jury of a minimum or maximum punishment).

The only exceptions are where the jury plays a role in sentencing (for example, in death penalty cases) or where the jury has been affirmatively misled about sentencing consequences (for example, by being told that a defendant would "go free" if found not guilty by reason of insanity), in which case their misperceptions would need to be corrected. See Shannon, 512 U.S. at 579, 587-88; United States v. Pabon-Cruz, 391 F.3d 86, 95 (2d Cir. 2004); Polouizzi, 564 F.3d at 162.  Neither exception applies here.  In a non-capital case such as this one, the jury does not have a role in determining the defendant's sentence; rather, the mandatory minimum penalties applicable to each of the crimes charged here have already been determined by Congress.  Here, the government will not make any representations to the jury regarding the sentencing consequences of a conviction or acquittal.  Thus, the possible punishments the defendant might face are simply not the jury's concern and entirely irrelevant.

Moreover, providing information about possible punishments to the jury would create a danger of unfair prejudice and confusion that would substantially outweigh its null probative value.  Such information "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." Shannon, 512 U.S. at 579.  In particular, information about possible punishments poses the obvious danger that the jury will decide guilt not on the evidence presented but on whether the jury believes that the punishments fit the alleged crimes.  In other words, such information would serve to facilitate jury nullification, a danger that this Court has an affirmative "duty to forestall or prevent." United States v. Thomas, 116 F.3d 606, 614-16 (2d Cir. 1997) (jury nullification is a violation of a juror's oath and courts may not permit jury nullification to occur "when it is within their authority to prevent").  For this reason, courts have repeatedly precluded evidence and argument about potential punishments on the grounds that it is irrelevant and unduly prejudicial. See, e.g., United States v. Graziano, 558 F. Supp. 2d 304, 326-27 (E.D.N.Y. 2008) (reference to mandatory minimum sentence should be precluded under Rule 403 because such information "creates a substantial danger that the jury will consciously or subconsciously allow knowledge of such punishment to impact on their deliberations on the question of the defendant's guilt or innocence" and thereby presents a "danger of unfair prejudice"); United States v. Maisonneuve, 954 F. Supp. 114, 116 (D. Vt. 1997) (granting government's motion to preclude evidence of minimum and maximum sentence faced by defendant on the grounds that such information is prejudicial).

The Second Circuit has addressed this issue in the specific context of child pornography cases.  In Pabon-Cruz, the court relied on Shannon in concluding that a defendant facing a mandatory minimum sentence in a child pornography prosecution had "no legal right to a charge informing the jury of the sentencing consequences of its decisions." 391 F.3d at 94- 95.  The court left open the theoretical possibility that such an instruction might be warranted in certain cases, but cited only the circumstance that had been hypothesized (but not actually found) in Shannon, namely, a case in which "the jury has been affirmatively misled by counsel or a witness." Id. at 95.

More recently, in <u>United States v. Polouizzi</u>, 564 F.3d 142 (2d Cir. 2009), the court held that "[o]ur precedent forecloses the conclusion that [a defendant] had a Sixth Amendment right to trial by a jury that had been instructed on the applicable mandatory minimum sentence." <u>Id.</u> at 160 (citing <u>Pabon-Cruz</u>, 391 F.3d at 94-95). The court went on to explain that, while a district court might have discretion in certain circumstances to provide jurors with an instruction regarding the applicable mandatory minimum sentence, such an instruction would be appropriate only where "instructing the jury on the consequences of its verdict will better ensure that the jury bases that verdict solely on the evidence and will better discourage nullification." <u>Polouizzi</u>, 564 F.3d at 162. Even assuming that a district court had the discretion to give such an instruction, the court concluded that it would not be an abuse of discretion "to decline to instruct the jury on the mandatory minimum sentence." <u>Id.</u> at 161-63.

III.    <u>Conclusion</u>

For the foregoing reasons, the government's <u>in</u> <u>limine</u> motions should be granted.

        Respectfully submitted,

        LORETTA E. LYNCH
        United States Attorney

By:    <u>/s/ Ameet B. Kabrawala</u>
        Ameet B. Kabrawala
        Allen S. Bode
        Assistant U.S. Attorneys
        (718) 254-6001 / (631) 715-7828

cc:    Defense Counsel (by ECF)